IN THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY, MARYLAND

| | |
|---|---|
| MARYLAND CONGRESS OF PARENTS AND TEACHERS, INC., ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | Case No.: CO2CV200001691 |
| v. ) | |
| ) | |
| NATIONAL CONGRESS OF PARENTS AND TEACHERS, INC., ) | |
| ) | |
| Defendant(s). ) | |

## VERIFIED COMPLAINT FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINRY AND PERMANENT INJUCTIVE RELIEF

COMES NOW, Plaintiffs Maryland Congress of Parents and Teachers, Inc., doing business as Maryland PTA by and through their counsel Charles Tucker, Jr. Esq. and the Tucker Moore Group, LLP and files this, their Complaint for a Temporary Restraining Order and for Preliminary and Permanent Injunctive Relief against Defendants, National Congress for Parents and Teachers, Inc., doing business as National PTA. For cause, Plaintiff would show unto the Court the following:

### PARTIES

1. Plaintiff, Maryland PTA is a charitable, not for profit, child advocacy organization with 833 constituent associations in Maryland and approximately 130,000 volunteer members. Its headquarters are located at 5 Central Avenue, Glen Burnie, Maryland 21061.

2. Defendant, National PTA is a charitable not for profit, child advocacy organization with constituent associations consisting of all 50 states, the District of Columbia, three U.S.

EXHIBIT A

territories, and Europe. Its headquartered at 1250 North Pitt Street, Alexandria, VA 22314.

## JURISDICTION AND VENUE

3. This is an action for a temporary restraining order and preliminary and permanent injunctive relief, pursuant to Maryland Rules 15-501 through 15-505.

4. Further this court has subject matter jurisdiction pursuant to MD. Code Ann., Courts and Judicial Proceedings Section 1-501.

5. Venue is proper in this district pursuant to Maryland Code 6-202 because Plaintiff's operations are based in Anne Arundel County and Defendant does not have a principal place of business in the State of Maryland.

## FACTS

6. In March, April, and May 2020, Maryland PTA responded to three inquiries from National PTA and provided over 200 pages of official records regarding what National PTA described as "multiple allegations regarding actions taken by Maryland PTA's Executive Committee and Board of Directors that may impact the compliance status of Maryland PTA with National PTA Standards of Affiliation.

7. On May 20, 2020, without a meeting or sharing details of the "allegations," National PTA sent Maryland PTA an Out of Compliance and Probation Notice ("Probation Notice"). The National PTA stated, "Maryland PTA [was] out of compliance with the National PTA Standards of Affiliation and [had] been placed in the Probation Phase of Noncompliance." The action was purportedly "based on the *National PTA Standards of Affiliation (SOA) Policy Document*, Trademarks section, which states, 'State constituent

associations shall take no action that will diminish the value and goodwill associated with the PTA trademarks.'"

8. Article of IV, Section 4 of the National PTA Bylaws provides:

   a. Governance. Each state and local constituent association organized under the direct authority of National PTA shall adopt bylaws for the governance of its association. Such bylaws shall not be in conflict with National PTA or their state nonprofit corporate laws and are subject to review by the National PTA Bylaws Committee.

9. Prior to the Probation Notice, Maryland PTA had started removal proceedings in accordance with its bylaws against its president elect. The Maryland PTA Board of Directors meeting scheduled a hearing for May 26, 2020, to address the president elect's conduct.

10. Maryland PTA also issued an advisory to local PTAs on April 17, 2020, and May 13, 2020, explaining the Maryland PTA Bylaws, as adopted under Maryland law, prohibited elections and conducting business of a PTA's general membership by electronic voting.

11. When there is a determination that a state constituent association is not in compliance with the Standards of Affiliation ("SOA" or "Standards"), the *National PTA Standards of Affiliation (SOA) Policy Document* (January 2020) describes the process National PTA will use. According to the *National PTA Standards of Affiliation (SOA) Policy Document*, Resource B, "While National PTA recognizes its responsibility to preserve the value and goodwill associated with the PTA Trademarks (as defined in the SOA) and brand, it is also committed to supporting and working collaboratively with its local and state constituent associations."

a. When National PTA determines a constituent association is out of compliance, the Notification Phase is the initial step.

b. If a constituent association fails to comply during the Notification Phase, the next step is the Intervention Phase.

c. The Probation Phase is the third step, and the Restructuring Phase is the step before the ultimate Revocation Phase.

d. Resource B does not indicate any step in the process will be skipped, except in the case of engagement, or a threat to engage, in conduct or activities "that may cause material harm to the value and goodwill associated with the PTA Trademarks or brand," at which time National PTA may revoke a state constituent association's charter.

12. On August 17, 2020, National PTA again reiterated its original demands, which Maryland PTA has satisfied in a number of responses beginning March 30, 2020. National PTA also directed Maryland PTA to provide new documents not previously requested and to agree to the demands by August 21, 2020.

13. On August 26, 2020, National PTA notified Maryland PTA it had entered the Restructuring Phase of noncompliance. National PTA set a mandatory meeting with Maryland PTA directors for September 3, 2020, and established a deadline of September 9, 2020 for Maryland PTA to "turnover access to funds, assets, and records (including human resource records) to National PTA." National PTA also forbade Maryland PTA from communicating with the State's constituent associations, using the PTA trademarks or brand, diminishing the value or goodwill of the brand, and expending any funds.

14. Without notifying Maryland PTA, National PTA notified State PTA leaders of the restructuring on August 27, 2020. Maryland PTA learned of the communication via the press.

15. Maryland PTA has become aware of multiple communications among National PTA officials and Maryland PTA officers, leaders, and members between March 2020 and August 31, 2020, aside from complaints to National PTA. Indications are National PTA has given advice to State PTAs that is inconsistent with State law, Maryland PTA bylaws, and the direction of the Maryland PTA Board of Directors.

16. Because of the interference of National PTA, a number of State PTAs have become openly defiant and noncompliant with the Maryland PTA bylaws and standards of affiliation. A number of State PTA members contacted the press and elected officials in an attempt to embarrass Maryland PTA or force it to acquiesce to practices that would violate the Maryland PTA bylaws.

## CAUSES OF ACTIONS

### COUNT 1

### TORTIOUS INTERFERANCE

17. Plaintiff re-alleges all prior paragraphs of the Complaint as if set out herein and in full with emphasis on paragraphs 13-15.

18. Maryland recognizes two types of tortious interference claims: "inducing the breach of an existing contract and, more broadly, maliciously or wrongfully interfering with economic relationships in the absence of a breach of contract." Kaser v. Fin. Prot. Mktg., Inc., 376 Md. 621, 628 (2003).

19. Defendant interfering with the constituent associations, prevents the Plaintiff from duly executing its operations especially during a time of much uncertainty due to the COVID-19 pandemic.

20. Plaintiff directs the Court to the affidavit submitted.

21. Plaintiff directs the Court to the Memorandum of Law in Support of a Temporary Restraining Order, Preliminary and Permanent Injunction submitted.

## COUNT II

### BREACH OF CONTRACT

22. Plaintiff re-alleges all prior paragraphs of the Complaint as if set out herein and in full with emphasis on paragraphs 7 and 11.

23. Defendant by breaching the contract, has not allowed the Plaintiff to operate with the autonomy and due process guaranteed to it in both the Plaintiff and Defendant's bylaws.

### DAMAGES

24. Because of the foregoing misconduct by the Defendant, without entry of a temporary restraining order, Plaintiff will suffer immediate, substantial, and irreparable harm regarding reputation, ability to conduct its business and economic harm.

25. School has commenced in the State of Maryland and the ability of the Plaintiff to be an effective advocate on behalf of its' 83,000 constituent associations and its' 130,000 members has been severely curtailed and constrained.

26. Plaintiff is under threat, as action has already commenced by the Defendant, to begin revocation of Plaintiff's ability to operate.

27. Plaintiff is unable to move forward with any programing or plan any programing for the academic year.

## RELEIF

28. Plaintiff requests that the Court issue the following relief:
    a. The Court issue an order granting Plaintiff a temporary restraining order and enjoining the Defendant from moving forward with restructuring, revoking the Plaintiff's operational status and further interference.
    b. The Court issue an order granting Plaintiff a preliminary injunction and enjoining the Defendant from moving forward with restructuring, revoking the Plaintiff's operational status and further interference.
    c. The Court issue an order granting Plaintiff a permanent injunction and enjoining the Defendant from moving forward with restructuring, revoking the Plaintiff's operational status and further interference.
    d. Award Plaintiff, attorney's fees, cost and expense of litigation; and
    e. Award such other relief to which Plaintiff may be entitled to under law.
29. Plaintiff respectfully request that bond be waived pursuant to Md. Rule 15-503(b).

**WHERE, PREMISES CONSIDERED,** Plaintiff demands judgment against the Defendant, all together with Court costs, including attorney's fees, and for any other relief which this Court deems just and proper.

Respectfully submitted this __3__ rd day of September 2020.

_____
Charles Tucker, Jr. Esq. 0808260001
TuckerMoore Law Group
Senior Partner
8181 Professional Place, Suite 207
Hyattsville, MD 20785
301-577-1175
Charles@tuckerlawgroupllp.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY a copy of the foregoing Memorandum of Law in Support of the Plaintiff's Motion for Temporary Restraining Order, Preliminary Injunction and Permanent Injunction was served via electronic mail and filed this 3rd day of September 2020, on:

Paula Goedert
Barnes & Thornburg LLP
One North Wacker Drive
Suite 4400
Chicago, IL 60606-2833
Paula.Goedert@btlaw.com

Respectfully submitted,

*/s/ Charles Tucker, Jr.*

Charles Tucker, Jr. Esq. 0808260001
TuckerMoore Law Group
Senior Partner
8181 Professional Place, Suite 207
Hyattsville, MD 20785
301-577-1175
Charles@tuckerlawgroupllp.com