STATE OF MARYLAND           }
COUNTY OF PRINCE GEORGE'S   }   Affidavit
                            }

I, EDNA HARVIN BATTLE, the undersigned, affirm as follows:

1. I am the president of the Maryland Congress of Parents and Teachers, Incorporated doing business as Maryland PTA.

2. Maryland PTA was organized in Charles County, Maryland in 1905, as a charitable, nonprofit, child advocacy organization.

    a. Its primary office is in Glen Burnie (Anne Arundel County), Maryland.

    b. Maryland PTA is a constituent association of the National Congress of Parents and Teachers, Incorporated.

    c. Maryland PTA is comprised of 833 constituent associations throughout the State of Maryland and approximately 130,000 volunteer members.

3. The National Congress of Parents and Teachers, Incorporated, doing business as National PTA, was founded in Washington, District of Columbia, in 1897.

    a. The National PTA headquarters are in the City of Alexandria, Virginia.

    b. National PTA is a charitable, nonprofit, child advocacy organization with constituent associations consisting of all 50 states, the District of Columbia, three U.S. territories, and Europe.

    c. The National PTA membership of approximately 3.4 million volunteers is made up of the members of its constituent associations.

4. In March, April, and May 2020, Maryland PTA responded to three inquiries from National PTA and provided over 200 pages of official records regarding what National PTA described as "multiple allegations regarding actions taken by Maryland PTA's Executive Committee and

Page 1

EXHIBIT A

Board of Directors that may impact the compliance status of Maryland PTA with National PTA Standards of Affiliation."

4. On May 20, 2020, without a meeting or sharing details of the "allegations," National PTA sent Maryland PTA an Out of Compliance and Probation Notice ("Probation Notice"). The National PTA stated, "Maryland PTA [was] out of compliance with the National PTA Standards of Affiliation and [had] been placed in the Probation Phase of Noncompliance." The action was purportedly "based on the *National PTA Standards of Affiliation (SOA) Policy Document*, Trademarks section, which states, 'State constituent associations shall take no action that will diminish the value and goodwill associated with the PTA trademarks.'"

   a. The Probation Notice also stated National PTA received numerous complaints, expressions of distrust of Maryland PTA's leadership, and threats to dissolve local constituent associations ("PTAs").

   b. National PTA assigned a support team to Maryland PTA, required Maryland PTA provide an action plan, and requested Maryland PTA "work with their attorney" to find a path forward for local PTAs to be able to hold electronic meetings and elections.

   c. The Probation Notice further prevented Maryland PTA from filling a position or removing any board members without National PTA approval during the probation phase.

5. Article of IV, Section 4 of the National PTA Bylaws provides

   > Governance. Each state and local constituent association organized under the direct authority of National PTA shall adopt bylaws for the governance of its association. Such bylaws shall not be in conflict with National PTA or their state nonprofit corporate laws and are subject to review by the National PTA Bylaws Committee.

6. Prior to the Probation Notice, Maryland PTA had started removal proceedings in accordance with its bylaws against its president elect. The Maryland PTA Board of Directors meeting scheduled a hearing for May 26, 2020, to address the president elect's conduct.

7. Maryland PTA also issued an advisory to local PTAs on April 17, 2020, and May 13, 2020, explaining the Maryland PTA Bylaws, as adopted under Maryland law, prohibited elections and conducting business of a PTA's general membership by electronic voting.

8. When there is a determination that a state constituent association is not in compliance with the Standards of Affiliation ("SOA" or "Standards"), the *National PTA Standards of Affiliation (SOA) Policy Document* (January 2020) describes the process National PTA will use. According to the *National PTA Standards of Affiliation (SOA) Policy Document*, Resource B, "While National PTA recognizes its responsibility to preserve the value and goodwill associated with the PTA Trademarks (as defined in the SOA) and brand, it is also committed to supporting and working collaboratively with its local and state constituent associations."

    a. When National PTA determines a constituent association is out of compliance, the Notification Phase is the initial step.

    b. If a constituent association fails to comply during the Notification Phase, the next step is the Intervention Phase.

    c. The Probation Phase is the third step, and the Restructuring Phase is the step before the ultimate Revocation Phase.

    d. Resource B does not indicate any step in the process will be skipped, except in the case of engagement, or a threat to engage, in conduct or activities "that may cause material harm to the value and goodwill associated with the PTA Trademarks or brand," at which time National PTA may revoke a state constituent association's charter.

9. On May 22, 2020, Maryland PTA retained the services of the Tucker Moore Law Group LLP to respond to the Probation Notice.

10. From May 22, 2020 through August 6, 2020, Maryland PTA attempted to work by and through legal counsel to resolve National PTA's concerns and end the probation action. The first meeting between Maryland PTA and National PTA to discuss the allegations occurred on July 27, 2020.

    a. On August 4, 2020, National PTA reiterated its demands from the Probation Notice and demanded new actions on the part of Maryland PTA before the probation would be lifted.

    b. On August 6, 2020, Maryland PTA responded to the National PTA, satisfying the new demand, and explaining that it would not violate State law or its bylaws.

11. On August 17, 2020, National PTA again reiterated its original demands, which Maryland PTA has satisfied in a number of responses beginning March 30, 2020. National PTA also directed Maryland PTA to provide new documents not previously requested and to agree to the demands by August 21, 2020.

12. Because Maryland PTA's counsel was not available, Maryland PTA was unable to meet National PTA's demands before the deadline.

13. On August 26, 2020, National PTA notified Maryland PTA it had entered the Restructuring Phase of noncompliance. National PTA set a mandatory meeting with Maryland PTA directors for September 3, 2020, and established a deadline of September 9, 2020 for Maryland PTA to "turnover access to funds, assets, and records (including human resource records) to National PTA." National PTA also forbade Maryland PTA from communicating with the State's

constituent associations, using the PTA trademarks or brand, diminishing the value or goodwill of the brand, and expending any funds.

13. Without notifying Maryland PTA, National PTA notified State PTA leaders of the restructuring on August 27, 2020. Maryland PTA learned of the communication via the press.

14. Maryland PTA has become aware of multiple communications among National PTA officials and Maryland PTA officers, leaders, and members between March 2020 and August 31, 2020, aside from complaints to National PTA. Indications are National PTA has given advice to State PTAs that is inconsistent with State law, Maryland PTA bylaws, and the direction of the Maryland PTA Board of Directors.

15. Because of the interference of National PTA, a number of State PTAs have become openly defiant and noncompliant with the Maryland PTA bylaws and standards of affiliation. A number of State PTA members contacted the press and elected officials in an attempt to embarrass Maryland PTA or force it to acquiesce to practices that would violate the Maryland PTA bylaws.

16. National PTA did not afford Maryland PTA the due process afforded in the national governing documents and besmirched the credentials and authority of the Maryland PTA Board of Directors. Because National PTA questioned the credibility of Maryland PTA directors, Maryland PTA was forced to seek legal counsel and expend funds to protect the organization and its good standing within the State.

17. Without the assistance of the Court, National PTA will take over Maryland PTA operations, finances, and resources without just cause. A takeover by National PTA will render Maryland

PTA powerless to govern its organization, destroy its good reputation, and result in the loss of members.

**I solemnly affirm under penalty of perjury and upon personal knowledge that the foregoing statements are true to the best of my knowledge or belief.**

_____
Edna Harvin Battle, President
Maryland PTA
September 3, 2020


State of Maryland            }
County of Prince George's    }

I certify that Edna Harvin Battle personally appeared before me this __3__ day of September 2020, acknowledging that she signed the foregoing Affidavit.

_____, Notary Public
Printed or typed name: __Glenda Romero__
My Commission Expires: __October 14, 2023__


GLENDA ROMERO
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires October 14, 2023